**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PAUL CHARLES HELMICK,                        )
                                             )
          Petitioner,                        )          Civil Action No. 19-722
                                             )          Magistrate Judge Maureen P. Kelly
          v.                                 )
                                             )          Re: ECF No. 1
DISTRICT ATTORNEY OF WASHINGTON              )
COUNTY, BARRY SMITH, *Superintendent*        )
*State Correctional Institution at Houtzdale,* )
and ATTORNEY GENERAL OF THE                  )
STATE OF PENNSYLVANIA,                       )
                                             )
          Respondents.                       )

**CORRECTED MEMORANDUM OPINION**

Paul Charles Helmick ("Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Mercer ("SCI-Mercer") in Mercer, Pennsylvania.  Petitioner initiated this action by filing a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 1, in which he challenges his 2012 convictions in the Court of Common Pleas of Washington County, Pennsylvania, for: attempted homicide in violation of 18 Pa. C.S.A. §§ 901(a) and 2501; aggravated assault in violation of 18 Pa. C.S.A. § 2701(a)(1); aggravated assault with a deadly weapon in violation of 18 Pa. C.S.A. § 2702(a)(4); and burglary in violation of 18 Pa. C.S.A. § 3502(a).  ECF No. 1 at 2. See Sentencing Tr., ECF No. 34-6 at 29-31; see also Com. v. Helmick, Docket No. CP-63-CR-552-2012 (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-63-CR-0000552-2012&dnh=rOfx08tFWk31g3X9NlmTaw%3D%3D (last visited Feb. 1, 2023)).

On July 18, 2012, Petitioner was convicted after a jury trial at which he testified.  Trial Tr. dated July 18, 2012, ECF No. 34-3 at 9 and 128-29.  On October 10, 2012, he was sentenced to an

1

aggregate term of imprisonment of 15 to 30 years, with financial penalties imposed as well. ECF No. 1 at 1; Sentencing Tr., ECF No. 34-6 at 29-31.

For the reasons stated below, the Petition will be denied, and a certificate of appealability will be denied.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Pennsylvania Superior Court summarized the relevant factual and procedural history of this case as follows.[2]

> This case stems from the victim, Lori Phillips, being struck in the head with a sledgehammer by Petitioner on the morning of January 29, 2012. The victim testified that her two-year relationship with Petitioner ended a few weeks before the incident occurred but stated that they remained friends. [Trial Tr. dated July 17, 2012] at 34. She testified that Petitioner had asked to speak with the victim on a daily basis so he could hear her voice to help him get over the break-up. Id. at 35.
>
> The victim testified that on January 28, 2012 she invited Petitioner to her apartment after he called her upset over the break-up. When Petitioner arrived, the victim's friend, Tammy Sprowls ("Sprowls"), was also at the apartment. Id. The victim could not recall how long Petitioner was there as she had experienced memory loss since the incident. Id. at 36-37. However, she did remember instructing Petitioner and Sprowls to leave after Petitioner spilled vodka on her during an argument. Petitioner and Sprowls left after the victim threatened to call the police.

---

[1] Full consent of the parties to proceed before a United States Magistrate Judge was obtained on December 21, 2022. ECF Nos. 11, 29, and 43.

[2] The Superior Court issued this recitation of the facts of Petitioner's case in its opinion denying his direct appeal. See Com. v. Helmick, 1600 WDA 2012, 2013 WL 11250751, at *1-4 (Pa. Super. Ct. Nov. 12, 2013). The PCRA Trial Court adopted this recitation in its Order and Notice dated March 17, 2017, in which it explained the reasons it intended to deny Petitioner's PCRA petition. PCRA Trial Ct. Op., ECF No. 18-1 at 289-292. In its order affirming the PCRA Trial Court, the Superior Court, in turn, found that "the PCRA [Trial Court] fully and correctly set forth the relevant facts" in its Order and Notice. PCRA Super. Ct. Op., ECF No. 18-1 at 282 and n.2.

Louis "Louie" Phillips ("Louie"), the victim's ex-brother-in-law, visited her at the apartment around 5:00 a.m. Petitioner and Sprowls then began repeatedly calling the victim. Id. at 39. Louie eventually quit answering the phone, but not before Petitioner told the victim "I know there is somebody up there, I'm going to kill you." Id. at 40. Soon after this phone call, the victim heard a loud vehicle in the parking lot which she thought sounded like Petitioner's pickup truck. She looked out the window of her apartment and saw Petitioner park his truck, exit the truck, and grab a sledgehammer while saying "I'm coming to get you." Id. at 41.

Petitioner made his way into the apartment building where he proceeded to strike the victim's apartment door with the sledgehammer. The victim testified that she remained in the middle of the entranceway that led up to her front door, and that she never got near the front door while Petitioner was hitting it with the sledgehammer. Petitioner broke the door down when the sledgehammer connected on its third hit. Id. at 42. The last thing the victim remembers while being in her apartment was Petitioner standing in her front door after he broke it open. The next thing she remembered was waking up in a medical helicopter, feeling blood trickling down the back of her head, and hearing the flight medic say "You're not going to die on my shift." Id.

The victim was flown to UPMC Presbyterian Hospital where she remained for eleven days. She testified that her injuries were significant and consisted of a right side skull fracture, six staples in her head, trauma in the middle ear, calcium deposits in her ear due to broken bones, consistent ringing in her right ear, a cracked rib, and a blood clot in the left side of her head. She stayed at her mother's house for about two weeks after being released from the hospital. The victim still experiences dizzy spells, headaches, her jaw cracking, her ear feeling like it is full of cotton, and persistent ringing in her right ear. Id. at 43-44.

On cross-examination, the victim testified that she was with Petitioner and Sprowls the night before the injury drinking vodka mixed with Coke; the victim drank about three glasses but was still aware of what was going on around her. The victim testified that she thought the incident may have been an "accident" due to the involvement of alcohol. Id. at 49. The victim does not remember seeing a sledgehammer when Petitioner broke down the door, and may have turned around when Petitioner entered her apartment. Id. at 50-51.

Trisha Church ("Church"), the victim's neighbor, also testified for the Commonwealth. Church recalled that she had previously seen Petitioner in the building.  Id. at 64-65.  On the morning of January 29, 2012, she heard three or four loud bangs on the victim's front door accompanied by screaming. She recalled hearing someone say, "I killed the bitch dead" right before she exited her apartment and entered the hallway.  Id. at 66.  Church found the victim lying on the floor bleeding and unconscious. She stayed with the victim until paramedics arrived.  On cross-examination, she testified that she had told a state trooper that during the banging she heard a male voice say, "Where's Louie, I'm going to find him and kill him."  Id. at 69.

Tara Whiteman ("Whiteman") lived directly across the hall from the victim. Whiteman testified that while sleeping on the night of January 29, 2012, she awoke to the sound of four very loud banging or pounding sounds about 30 feet from her bedroom.  Id. at 75-76. Whiteman left her bedroom and walked out into the building hallway where she saw Petitioner, who she had known most of her life, walk out of the victim's apartment with a sledgehammer and close the door slowly behind him.  When Whiteman asked what he was doing, Petitioner responded, "I killed that bitch dead" as he proceeded to leave the apartment building.  Id. at 78.  Whiteman then pushed open the victim's door and found the victim lying face down at the end of an entryway in a pool of blood with her feet pointing towards the front door.

Photographs were taken of the dented front door, the stairwell leading up to the hallway, the broken dead bolt and door frame, a pool of blood on the floor toward the end of the entranceway, and blood spatter marks on the wall next to the pool of blood. Petitioner was apprehended and his truck was seized.  The sledgehammer was found behind the seat.  Petitioner's clothing and shoes were also placed into evidence and sent for DNA testing.

Video surveillance footage of the apartment complex was obtained and depicted Petitioner's truck, Petitioner carrying an object with a long handle, and Petitioner wearing clothing matching what was recovered from his person.  The footage showed Petitioner walking on the sidewalk and going up the stairs which lead to the side door near the victim's apartment.  Based on the video, Petitioner was in the building for 90 seconds; he was seen returning to his truck and placing something in his truck bed.

Petitioner testified on his own behalf.  He detailed his romantic relationship with the victim and denied her characterization of their

4

break-up, averring that she lied about his request for daily telephone calls. Trial Tr. dated July 18, 2012, at 206-207. He characterized

their relationship as "friends with benefits." Id. at 237. Petitioner averred that he had never laid a hand on the victim. Id. at 243.

[Petitioner testified that] on Saturday, January 28th, he was at the victim's apartment drinking vodka with her and Sprowls until one or two in the morning. A verbal argument took place and the victim asked Petitioner and Sprowls to leave. Id. at 209-13. Petitioner and Sprowls left but continued drinking together; he testified that at this point he had been awake for 30 to 36 hours. Petitioner explained that phone calls with the victim and Louie ensued and they all began to argue. Petitioner alleged that Louie threatened to damage his truck by placing ball bearings in his gas tank. Id. at 218. Petitioner noted the problems he had with Louie in the past. Id. at 214-17. Petitioner testified that his anger toward Louie motivated him to return to the victim's apartment in an effort to confront Louie and "smack him around a little bit." Id. at 221.

Petitioner went to the victim's apartment before noon on the 29th and took his sledgehammer with him in case Louie refused to come out of the apartment. Petitioner testified he only intended to use the sledgehammer to knock the door down, not as a weapon. Petitioner stated that he began to hit the door with the sledgehammer and yelling, "where the H is Louie at ... where you at, b-i-t-c-h, where you at, where you at Louis ..." Id. at 223. When the door finally broke open, Petitioner recalled seeing the victim approximately three to four feet in front of him. He testified that he used the sledgehammer to "push her out of the way" with a shoving motion; Petitioner denied hitting her with the sledgehammer. Id. at 224. He claimed the victim was about three or four feet away from the door. Petitioner testified that he did not realize the victim was hurt. Id. at 228. After deciding Louie was not there, Petitioner left. Petitioner testified that when he saw Whiteman in the hallway he sarcastically told her, "I killed the bitch dead" in reference to Louie. Id. at 228-29.

On cross-examination, Petitioner stated that he did not know if Louie was still in the apartment when he began striking the door. When asked "did the sledgehammer make any contact with her?" Petitioner responded, "evidently it did, but I didn't realize it did." Id. at 234. After looking at one of the Commonwealth's exhibits, Petitioner agreed that the bloodstain in the entranceway is farther than three to four feet, the distance he claimed the victim was

5

standing when he entered the apartment. Id. at 231-37. Petitioner described the incident as an "accident." Id. at 237-240.

The Commonwealth then called the victim in rebuttal. She testified that Petitioner's statement that he never laid a hand on her was not true. She recalled that Petitioner had punched her in the face about a year earlier. She also recalled two separate occasions in 2011 when Petitioner poured beer over her head, once in the company of Sprowls. Id. at 278-81.)

PCRA Trial Ct. Op., ECF No. 18-1 at 290-93 (citation format and reference to the "Petitioner" amended for consistency, internal footnote omitted). See also Com. v. Helmick, 1600 WDA 2012, 2013 WL 11250751, at *1-4 (Pa. Super. Ct. Nov. 12, 2013).[3]

Following his conviction, Petitioner was appointed new counsel, and he timely filed a direct appeal to the Superior Court on October 11, 2012. ECF No. 18-1 at 293; See also Helmick, 2013 WL 11250751, at *4. Petitioner asserted three grounds for relief on direct appeal. ECF No. 19-1 at 3. His conviction and sentence were affirmed by the Superior Court on November 12, 2013. Helmick, 2013 WL 11250751, at *1. Petitioner timely filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on December 10, 2013, in which he asserted a single ground for relief.. ECF No. 19-1 at 64 and 67. Allocatur was denied on June 2, 2014.       See     Docket, Com. v. Helmick, 577 WAL 2013       (available     at https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=577%20WAL%202013&d nh=PEJovi9OD7dQI4u7ZQfBQg%3D%3D (last visited Feb. 1, 2023)). Petitioner did not file a

---

[3] The underlying state court record submitted by Respondents in this matter was disorganized, difficult to follow, and often did not match with the index that Respondents are required to provide pursuant to LCvR 2254.E.1.d. This unnecessarily increased the amount of time and judicial resources necessary to review and adjudicate Petitioner's claims. Respondents are cautioned that "'Judges are not like pigs, hunting for truffles buried in' the record[,]" and that they should avoid a similar lack of care in future cases. Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys., 309 F.3d 433, 436 (7th Cir. 2002) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

petition for writ of *certiorari* with the United States Supreme Court. ECF No. 1 at 4. As a result, his conviction and sentence became final 90 days after *allocator* was denied – or September 1, 2014.

On December 23, 2014, Petitioner filed a *pro se* petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546.[4] ECF No. 19-1 at 132 and 259. He raised fifteen claims for relief in the *pro se* PCRA petition. This filing was supported by an appendix of exhibits, which was submitted on the same date. ECF No. 18-1 at 176 and 220. The exhibits included a proposed witness list, affidavits, a police report, and the Superior Court's decision on direct appeal. Id. at 177.

Petitioner filed a supplement to his *pro se* PCRA petition on January 23, 2015, in which he asserted two additional claims. ECF No. 19-1 at 263 and 270. Counsel was appointed, who subsequently filed a no-merit letter and sought leave to withdraw on November 4, 2016. ECF No. 18-1 at 250. Petitioner filed a *pro se* response to the no-merit letter on November 21, 2016. ECF No. 19-1 at 273 and 289.

On March 7, 2017, the PCRA Trial Court granted Petitioner's counsel leave to withdraw, and issued notice of its intent to dismiss the PCRA petition without a hearing. ECF No. 18-1 at 259. Petitioner responded thereto on April 12, 2017 , ECF No. 25-5 at 11 and 34. The PCRA Trial Court denied post-conviction relief on April 25, 2017. ECF No. 18-1 at 312. After dismissal, Petitioner filed motions for relief with the PCRA Trial Court on May 8 and 10, 2017. ECF Nos. 30-2 and 30-3. There is no indication on the record before this Court or the state court

---

[4] Because Pennsylvania applies the so-called "prisoner mailbox rule" to *pro se* PCRA petitions, see, e.g., Com. v. Little, 716 A.2d 1287, 1288-89 (Pa. Super. Ct. 1998), the effective date of filing appears to be December 23, 2014 – the date on which the certificate of service states that that petition was mailed. ECF No. 19-1 at 259.

dockets that these motions were resolved.  Cf. ECF No. 30-5 at 5-6 (motion dated June 27, 2017 seeking remand from the Superior Court to the trial court to address these earlier motions).  See also ECF No. 30-6 at 3 (order dated June 30, 2017, denying remand).

On May 22, 2017, Petitioner filed a *pro se* notice of appeal with the Pennsylvania Superior Court.  ECF No. 30-4 at 4.  This was followed by his supporting brief in which he raised eight grounds for relief.  ECF No. 30-7 at 10-11.  The Superior Court denied relief on August 15, 2018.  ECF No. 18-1 at 282.  Petitioner moved for reargument on August 28, 2018.  ECF No. 30-8 at 2 and 10.  This request was denied by the Superior Court on October 23, 2018.  ECF No. 20 at 32.  See also Docket, Com. v. Helmick, 785 WDA 2017 (available at https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=785%20WDA%202017&d nh=NSWa3zTYYuRlr9EJtJF5Wg%3D%3D (last visited Feb. 1, 2023)).

Petitioner sought leave to appeal from the Pennsylvania Supreme Court on November 16, 2018, which was denied on May 22, 2019.  ECF No. 20 at 1 and 17; ECF No. 18-1 at 315.  See also Docket, Com. v. Helmick, 452 WAL 2018 (available at https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=452%20WAL%202018&d nh=OPimFeTRzXxrtbmqbcCVPw%3D%3D (last visited Feb. 1, 2023)).

Pursuant to the prisoner mailbox rule, the instant federal habeas Petition is deemed filed on June 7, 2019.  ECF No. 1 at 15.  See Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) ("we hold that a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court.").  Respondents answered the Petition on October 7, 2019.  ECF No. 12.  Respondents were ordered to file an amended answer that complied with applicable Local Rules on October 10, 2019.  ECF No. 13.  They submitted piecemeal exhibits by several filings.  See ECF Nos. 15, 17-21, and 34.  Petitioner was granted an extension of time to file a

traverse. ECF Nos. 22-23. Petitioner timely submitted the Traverse, ECF No. 26, as well as additional electronic copies of state court records. ECF Nos. 25 and 30.

The Petition is ripe for consideration.

## II. CLAIMS

Petitioner is not entirely clear as to the specific grounds for federal habeas relief that he is raising. As written, the asserted grounds for relief appear to be compound, and mix factual allegations together with legal claims. The following is a verbatim recitation of the grounds as they are presented by Petitioner, followed by this Court's parsing of Petitioner's filing into claims for relief.

Ground 1: The instant case involves an abundance of alcohol consumption. Prior to trial defense was forbidden from raising an issue of "voluntary intoxication", by order of Trial Court depriving the appellant of a fair and just trial.

The prosecution ·did use a statement that was made by appellant upon leaving apartment, "I killed the bitch dead," to insinuate his intent to kill victim. Defense counsel could not properly defend to this statement without introducing intoxication.

Also, the prosecution, in questioning appellant on the stand asked why he did not see victim laying on the floor when exiting the apartment. Then pushed the issue on closing argument, that no way could he have not seen the victim. Trial Court erred by mechanically applying the rules governing "involuntary intoxication" under; 18 Pa. C.S.A. § 308, when it allowed statement leaving apartment to be introduced by prosecution to suggest intent, but than not allowing the defense to use alcohol as a defense for logic in making it or the main reason he could not see victim laying on the floor when exiting apartment. Thus, barring him from properly defending himself to their allegations.

Ineffectiveness existed by counsel waiting for day of trial and not filing a suppression motion for exclusion of statement. Counsel not

prepared to present a proper argument. Also, by not objecting thereby failing to preserve this issue for review.

ECF No. 1 at 7.

The Court interprets this ground as a single claim of ineffective assistance of counsel based on the above allegations.

Ground 2:     Court erred by not holding a voir dire hearing in which prosecution brought up the fact of juror misconduct. An in chamber conference took place after the prosecution brought the issue up outside the presence of appellant, who was unaware matter was being discussed. Also, it was known that an officer of the court had conversations with a member of the jury, during trial, yet nothing was done to voir dire the juror. Defense counsel, stated; "that it may benefit the defendant," without ever objecting to or discussing matter with appellant. Thus, displaying ineffectiveness. Appellant avers this whole issue amounts to "structural error".

Id.

The Court interprets this ground as two distinct claims for relief: (a) a claim that trial counsel was ineffective for objecting to the prosecution's motion to remove a juror without first consulting with Petitioner, or moving to conduct *voir dire* of the juror based on her alleged disinterest in the case; and (b) a claim of ineffective assistance of counsel based on failing to conduct *voir dire* of the juror based on communications between the juror and court staff.

Ground 3:     Ineffectiveness upon trial counsels failure to investigate and/or consult with a forensic/medical expert, where expert would have supported defense, but instead relied solely on appellants testimony. During trial, appellant was denied cross-examination of witnesses whom took photographs of scene and allegedly collected DNA from weapon involved. They were not introduced. Appellant requested that counsel ask for a continuance and/or recess to request for the introduction of said witnesses. Counsel refused. Counsel, furthermore, failed to object to the absence of lab tech., analyst/sorologist, whom actually recovered alleged blood DNA from weapon, thus denying his right to confrontation. Said analyst

was never identified in discovery or at trial creating a break in chain
of evidence.

Id. at 7-8.

The Court interprets this ground as an attempt to assert claims for: (a) ineffective assistance

of counsel with respect to not obtaining or presenting expert witnesses; as well as (b) a violation

of Petitioner's rights under the Confrontation Clause of the Sixth Amendment to the United States

Constitution; and (c) ineffective assistance of counsel for failing to object to the same.

Ground 4:    Overall the appellant claims he was denied effective counsel, and
             had· brought forth all allegations of error within PCRA, yet, was
             denied an evidentiary hearing even on constitutional claims. PCRA
             court should have had an evidentiary hearing on the merits,
             affording a record of errors to be established.

             The appellant asserts, further, that he was denied available witnesses
             that could have rebutted over inflated seriousness of the injuries
             sustained by the victim presented by the Commonwealth. Had
             evidence been presented it would of added reasonable doubt to
             appellants intent to commit murder, because after the incident the
             appellant phoned the victim. In fact, prior to trial, the victim, was
             telling everyone that she felt it was an accident and that her injuries
             are not as bad as they seem.

Id. at 8.

The Court interprets this ground as seeking relief based on: (a) the PCRA Trial Court's

failure to grant a hearing; and (b) alleged ineffective assistance of trial counsel for failing to present

witnesses to impeach testimony regarding the seriousness of the victim's injuries.

Ground 5:    Further issues of ineffectiveness include; A witness (Trisha Church)
             gave testimony to the fact that she over heard through a door, the
             comment of; "I killed that bitch dead." Yet, said testimony was not
             included in discovery or within any initial police reports, counsel
             did not contest and/or object to this testimony.

Id.

This ground also appears to be a single claim for relief.

Ground 6:    Counsel failed to object in requesting an offer of proof in seeking a ruling on admissibility of alleged pre-judicial bad acts evidence prior to victims rebuttable testimony which were remote never criminally charged and bore no relationship to offenses that were brought forth before the court. Then denying the appellants right to testify on his own behalf or call available witnesses in his defense that were specifically requested by defendant to sire-rebuttal testimony depriving him of a fair trial.

    Ineffectiveness in failing to object to several falsely mis-represented facts adduced at trial, on prosecutors closing arguments. Ineffective. failing to object to trial courts giving of a supplemental transfered intent instruction to the jury, that unlawfully broadened the theory of culpability as charged in information and presented at trial by the Commonwealth. Then by failing to object to Mr. Helmicks absence during the reading of instruction of transfered intent.

Id.

The Court interprets this ground to seek relief based on ineffective assistance of counsel for trial counsel's: (a) failure to object to the impeachment testimony of the victim; (b) failure to present surrebuttal witness testimony to challenge the impeachment testimony of the victim; (c) failure to object to statements made by the prosecution during closing arguments; and (d) failure to object to the trial court providing a transferred intent instruction to the jury and objecting to Petitioner's absence while reading that instruction to the jury.

Ground 7:    Ineffective by failing to preserve any any issues for appeal, or ask for reconsideration of sentence imposed based on the circumstances of the case.

    Ineffective during post-sentence motion phase of this case on direct appeal by direct appeal counsel for failing to consult with defendant post-sentence and prior to formulating motions. And also, by failing to properly preserve issues for appellate review related to discretionary aspects of sentence.

    Herein, appellant sought relief through PCRA, in which lower court denied without an evidentiary hearing and/or without addressing all

issues thus denying him proper due process in collateral
proceedings.

Id. at 9.

Ground 7 is analyzed as a single, stand-alone claim for relief.

Ground 8:     Before appellant was appointed PCRA counsel, he moved pro-se in
              which he submitted a supplemented PCRA. The court failed to
              recognize the issues within his supplemental filing. At the bare
              minimum the lower court should have accepted it as amended
              PCRA.

              Issues being; 1 trial court erred as a matter of law when it gave an
              unwarranted and unnecessary jury instruction on voluntary
              intoxication as a defense which neither party requested as voluntary
              intoxication defense was not available nor pursued by the defendant.
              It only served to confuse the jury.

              2 Ineffective counsel for failing to object to voluntary intoxication
              charge to jury thereby failing to preserve the issue for litigation in
              post-sentence motions and on appeal.

Id.

The Court interprets this ground to attack: (a) the trial court's voluntary intoxication
instruction; and (b) trial counsel's alleged ineffective assistance by failing to object to the same.
To the extent that Petitioner seeks relief for the PCRA Trial Court's failure to consider the issues
raised in his supplemental PCRA petition, such an argument is duplicative of Ground 4(a), and
will be addressed buy this Court with respect to the same.

## III. PROCEDURAL ISSUES

Before the Court can address the merits of Petitioner's federal habeas claims, it will address
whether the Petition fulfills the applicable procedural requirements, as set forth in the
Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").

### A. The AEDPA Statute of Limitations

The first consideration in reviewing a federal habeas petition is whether a petition was timely filed within the applicable statute of limitations.  In 1996, Congress enacted the AEDPA, which generally established a strict one-year statute of limitations for the filing habeas petitions pursuant to 28 U.S.C. § 2254.  The applicable portion of the statute is as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis.  Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005).

Thus, in analyzing whether a petition for writ habeas corpus has been timely filed within the one-year limitations period, a federal court must undertake a three-part inquiry.  First, the court must determine the "trigger" date for the individual claims raised in the petition.  Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A).  Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2).  Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.  See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No 99-5, 2004 WL 825858, at *3 (W.D. Pa., Mar. 10, 2004)).

In the instant case, and as stated above, Petitioner's conviction became final for the purposes of the AEDPA on September 1, 2014 – 90 days after the Pennsylvania Supreme Court denied *allocator* from the Superior Court's decision affirming his conviction, and the expiration of the period for Petitioner to seek a writ of *certiorari* from the Supreme Court of the United States. This is the trigger date for each of Petitioner's grounds for relief, except for Ground 4(a).

The clock on the AEDPA's one-year statute of limitations began running on Grounds 1-3, 4(b), and 5-8 on September 1, 2014, and continued to December 23, 2014 – a period of **113 days** – when Petitioner's *pro se* PCRA petition was constructively filed.  ECF No. 19-1 at 259.  The clock did not begin running again until May 22, 2019, when the Pennsylvania Supreme Court denied *allocatur* with respect to the PCRA petition.  See Docket, Com. v. Helmick, 452 WAL 2018.  The clock ran for another **16 days**, until June 7, 2019, when Petitioner signed the instant federal habeas Petition, and presumably placed it in the prison mail system.  ECF No. 1 at 15.

The total time that the clock was running under Section 2244(d)(1) and (2) on Grounds 1-3, 4(b), and 5-8 is the sum of 113 days and 16 days – or **129 days**.  This is less than one year. Accordingly, these grounds for relief are timely filed based on the one-year period of limitation set forth in Section 2244(d)(1).

Unlike the other asserted grounds, Ground 4(a) arises from alleged errors in Petitioner's PCRA proceedings – specifically, that the PCRA Trial Court did not address claims raised in Petitioner's Supplemental PCRA Petition.  ECF No. 1 at 8; ECF No. 19-1 at 263.  The earliest possible trigger date for Ground 4 is April 25, 2017 – the date on which the PCRA Trial Court denied the PCRA petition without a hearing.  ECF No. 18-1 at 312.  But, because there was a properly-filed PCRA proceeding pending at the time, the AEDPA's limitations clock did not begin until the Pennsylvania Supreme Court denied *allocator* on May 22, 2019.  The clock on Ground 4(a) ran **16 days**, until the constructive filing of the instant federal habeas proceedings. Accordingly, like the other grounds raised by Petitioner, Ground 4(a) also is timely.

### B.  Exhaustion and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas relief.  To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review.  See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

Moreover, a petitioner must present every claim raised in a federal habeas petition to the state trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). In Pennsylvania, petitioners afford the state courts that opportunity by fairly presenting their claims to the Superior Court, either on direct review or on appeal of a petition for relief under the PCRA. Lambert, 387 F.3d at 232-34; see also Rodland v. Sup't of SCI Houtzdale, 837 F. App'x 915, 919 (3d Cir. 2020).

A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). A petitioner bears the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987). In the case at issue, it is clear that Petitioner's claims are exhausted at the state court level at the very least in the sense that there is no state avenue for relief available to him due to the PCRA's one-year statute of limitations. See 42 Pa. C.S.A. § 9545(b).

However, beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). This doctrine is applicable where, *inter alia*, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law

that is "independent" of the federal question and "adequate" to support the judgment.  Coleman,

501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and

adequate" state law ground for denying habeas relief.  Whitney v. Horn, 280 F.3d 240, 251 (3d

Cir. 2002).

Respondents generally assert that "several of the claims raised [in the instant Petition] are

not subject to merits review due to exhaustion and procedural default."  ECF No. 12 at 14

(emphasis in original).  This statement is not particularly useful to the resolution of this issue, as

Respondents' Answer as a whole lacks specificity.  Thus, it is difficult to determine to which of

the present grounds for relief that Respondents refer.

A review of the state court record indicates that Petitioner raised the following grounds at

the Superior Court on direct review:

> 1.  Whether the Court erred / abused its discretion in not allowing the
>     defense to call witnesses to rebut the testimony of [the victim] Lori
>     Phillips during cross-examination that the reason she told others the
>     incident in question was an accident was because she felt alcohol
>     had played a role[;]
>
> 2.  Whether the Court erred / abused its discretion in allowing the
>     prosecution to call [the victim] Lori Phillips as a rebuttal witness to
>     testify to specific instances in the past where [appellant] was
>     physically violent towards her[;] and
>
> 3.  Whether [Petitioner's] sentence is reasonable in light of the
>     circumstances.

ECF No. 19-1 at 28.  None of these grounds was presented as a constitutional claim.  Additionally,

the third issue above was explicitly found to have been waived because it was not timely raised in

a post-sentence motion.  Id. at 90-91.  Further, none of these issues appears to correspond with the

grounds asserted in the present Petition.

In his *pro se* brief to the Superior Court regarding his PCRA petition, Petitioner presented

the following questions:

1. Was trial counsel ineffective for failing to secure the services of a medical/forensic expert to review the victim's injuries and blood spatter evidence and call an expert at trial after the trial court had approved the release of funds for that purpose?

ECF No. 30-7 at 10.  This corresponds to Ground 3(a) of the instant habeas Petition.  ECF No. 1

at 7-8.

2. Was trial counsel ineffective for failing to seek to suppress and/or exclude or otherwise object to the Commonwealth's use of an unreliable statement made by [Petitioner] while he was in a highly intoxicated state that was exploited by the Commonwealth at trial?

ECF No. 30-7 at 10.  This corresponds to Ground 1 of the Petition.  ECF No. 1 at 7.

3. Did trial counsel perform ineffectively by failing to call other fact witnesses to the stand previously identified by [Petitioner] capable of refuting the lay witness testimony offered by the Commonwealth with regards to the seriousness of [victim] Miss Phillips' injuries after the accident that were exaggerated at trial to negate serious bodily injury?

ECF No. 30-7 at 10.  This corresponds to Ground 4(b) of the Petition.  ECF No. 1 at 8.

4. Was trial counsel ineffective for objecting to the Commonwealth's request to remove Juror #2 for cause without first consulting with [Petitioner] and insisting upon *voir dire* of the Juror in a separate hearing where the Juror was inattentive throughout the entire trial and ignoring evidence being presented?

ECF No. 30-7 at 10.  This corresponds with Ground 2(a) of the Petition.  ECF No. 1 at 7.

5. Did trial counsel perform ineffectively by failing to object to the admission of prior bad acts testimony from [victim] Miss Phillips against [Petitioner] absent a sufficient offer of proof where said acts were never criminally charged?

ECF No. 30-7 at 10.  This corresponds to Ground 6(a) of the Petition.  ECF No. 1 at 8.

6. Was trial counsel ineffective for failing to recall [Petitioner], Tammy Sprowls and James Hoban to the stand in surrebuttal to refute [victim] Miss Phillips' damaging prior bad acts testimony

denying [Petitioner] his right to testify in his own defense and a fair
trial?

ECF No. 30-7 at 11.  This corresponds to Ground 6(b) of the Petition.  ECF No. 1 at 8.

    7.    Was trial counsel ineffective for failing to object to the trial court's
giving of an unwarranted jury charge on voluntary intoxication
where a voluntary intoxication defense was not presented at trial
[Petitioner] was prevented by the court from using intoxication to
explain the making of an unreliable statement?

ECF No. 30-7 at 11.[5]  This corresponds to Ground 8(b) of the Petition.  ECF No. 1 at 9.

    8.    Is the order of April 25, 2017 denying PCRA relief without a hearing
a final order where not all issues were addressed by the PCRA court?

ECF No. 30-7 at 11.  This corresponds to Ground 4(a) of the Petition.  ECF No. 1 at 8.

Based on a review of the state court records in this case, the Court concludes that
Grounds 2(b), 3(b), 3(c), 5, 6(c), 6(d), 7, and 8(a) were not exhausted, and are procedurally
defaulted.[6]  See also Stringer v. Folino, No. 13-221, 2016 WL 836347, at *13-14 and n.16 (W.D.
Pa. Feb. 1, 2016), report and recommendation adopted, 2016 WL 826016 (W.D. Pa. Mar. 3, 2016)
(waiver due to petitioner's failure to recite claims in a Statement of Questions section in his state
court appeal brief was independent and adequate ground for procedural default).

The remaining grounds asserted grounds for habeas relief – Grounds 1, 2(a), 3(a), 4(a),
4(b), 6(a), 6(b), and 8(b) – will be addressed on the merits.  These claims were presented to and

---

[5] The PCRA Superior Court found that this issue had been waived because it was not properly
presented to the PCRA Trial Court as an ineffective assistance of counsel claim.  ECF No. 18-1 at
284-85.  However, this is at odds with Petitioner's supplemental PCRA petition, which appears to
raise this very issue with the PCRA Trial Court.  ECF No. 19-1 at 266-67.  Accordingly, out of an
abundance of caution, this Court will address the merits of Ground 8(b).

[6] While it is not apparent whether Petitioner intends to do so, to the extent that he invokes Ground
1 to attack the trial court's refusal to allow him to present evidence of his voluntary intoxication
during the commission of the crimes, the same is unexhausted and procedurally defaulted.  See
ECF No. 1 at 8.  See also ECF No. 26 at 12-14.

addressed by the Superior Court of Pennsylvania – save for Ground 8(b), the merits of which will be addressed out of an abundance of caution.  Cf. 28 U.S.C. § 2254(b)(2).

The United States Supreme Court has held that where a petitioner has to follow state procedure within the required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; see also Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); Hull v. Freeman, 991 F.2d 86, 90-91 (3d Cir. 1993) (same).  The United States Supreme Court in Coleman further stated that it recognized "the important interest in finality served by state procedural rules and the significant harm to the States that results from the failure of federal courts to respect them." 501 U.S. at 750.

The Supreme Court has defined "cause" as "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986).  "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list.  Id.  Here, Petitioner has failed to show cause to excuse default of any ground for relief not presented to the Superior Court either on direct appeal or in his PCRA appeal.

In order to show a fundamental miscarriage of justice, the Supreme Court requires a petitioner to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 321 (quoting Murray, 477 U.S. at 496).  Under this standard, a petitioner must "support his allegations of constitutional error with

new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S at 324. Once such evidence is presented, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327.

In this case, Petitioner has adduced no new evidence of his actual innocence, nor do his arguments lead to the conclusion that "it is more likely than not that no reasonable juror" would have convicted him.  Indeed, given his admission both at trial and in his briefing that he struck the victim in the head with a sledgehammer after using that sledgehammer to force his way into her home without a right to do so, ECF Nos. 26 at 10 and Trial Tr. dated July 18, 2012, ECF No. 34-3 at 24, 26, 44, and 56-57, it is doubtful that Petitioner could meet this high standard.

Accordingly, this Court will deny Grounds 2(b), 3(b), 3(c), 5, 6(c), 6(d), 7, and 8(a) as procedurally defaulted.

## IV.  APPLICATION OF MERITS STANDARD OF REVIEW

Federal courts are permitted to grant habeas relief from the judgment of a state court only when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue also is raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue.  See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d).  The Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the

Supreme Court of the United States" or (2) where that state court decision "involved an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case. Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 405-06).

In addition, the United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pa. Dep't of Corrs., 834 F.3d 263, 368 (3d Cir. 2016) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the United States Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Specific factual determinations by the state court are that are subsidiary to the ultimate decision to grant post

conviction relief are subject to the presumption of correctness, and must be overcome by a petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Lambert, 387 F.3d at 235-236. The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-finding." Id. at 236 n.19. If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence. See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. Ross v. Atty. Gen. of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008).

### A. Ground 4(a) Is Not Cognizable.

At Ground 4, Petitioner asserts that:

> Overall the appellant claims he was denied effective counsel, and had· brought forth all allegations of error within PCRA, yet, was denied an evidentiary hearing even on constitutional claims. PCRA court should have had an evidentiary hearing on the merits, affording a record of errors to be established.

> The appellant asserts, further, that he was denied available witnesses that could have rebutted over inflated seriousness of the injuries sustained by the victim presented by the Commonwealth. Had evidence been presented it would of added reasonable doubt to appellants intent to commit murder, because after the incident the appellant phoned the victim. In fact, prior to trial, the victim, was telling everyone that she felt it was an accident and that her injuries are not as bad as they seem.

ECF No. 1 at 8. Ground 4(a) relates to Petitioner's exhausted assertion that the "PCRA court should have had an evidentiary hearing on the merits, affording a record of errors to be established."

But this Court's ability to grant habeas relief is limited to violations of the "Constitutional or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims of error by the PCRA Trial Court or PCRA Superior Court simply are not cognizable in a federal habeas action. See, e.g., Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation.") See also Lambert, 387 F.3d at 247 ("habeas proceedings are not the appropriate forum for Lambert to pursue claims of error at the PCRA proceeding.")

Accordingly, the requested habeas relief based on Ground 4(a) is denied.

**B. Ineffective Assistance of Counsel Claims**

Remaining Grounds 1, 2(a), 3(a), 4(b), 6(a), 6(b), and 8(b) are based on claims of ineffective assistance of counsel. Except as to Ground 8(b), the AEDPA's deferential standard of review applies.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). The United States Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance must have been unreasonable; and (2) counsel's unreasonable performance must have actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge

counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Id. at 690.

The three-part test applied by the state courts of Pennsylvania for ineffectiveness of counsel has been found by the Third Circuit not to be contrary to Strickland. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, thus, the Pennsylvania state court's application of that test in Petitioner's PCRA proceedings is not contrary to Strickland.

The first prong of the Strickland test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, a petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id. Instead, a petitioner is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at 687).

The second prong requires a petitioner to demonstrate that errors by counsel deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

### 1. Ground 1

At Ground 1, Petitioner alleges that his trial counsel was ineffective for failing to suppress

Petitioner's statement of "I killed the bitch dead," as he we leaving the scene of the crime.

> The instant case involves an abundance of alcohol consumption. Prior to trial defense was forbidden from raising an issue of "voluntary intoxication", by order of Trial Court depriving the appellant of a fair and just trial.
>
> The prosecution ·did use a statement that was made by appellant upon leaving apartment, "I killed the bitch dead," to insinuate his intent to kill victim. Defense counsel could not properly defend to this statement without introducing intoxication.
>
> Also, the prosecution, in questioning appellant on the stand asked why he did not see victim laying on the floor when exiting the apartment. Then pushed the issue on closing argument, that no way could he have not seen the victim. Trial Court erred by mechanically applying the rules governing "involuntary intoxication" under; 18 Pa. C.S.A. § 308, when it allowed statement leaving apartment to be introduced by prosecution to suggest intent, but than not allowing the defense to use alcohol as a defense for logic in making it or the main reason he could not see victim laying on the floor when exiting apartment. Thus, barring him from properly defending himself to their allegations.
>
> Ineffectiveness existed by counsel waiting for day of trial and not filing a suppression motion for exclusion of statement. Counsel not prepared to present a proper argument. Also, by not objecting thereby failing to preserve this issue for review.

ECF No. 1 at 7.

The statement "I killed the bitch dead" or "I killed that bitch dead" was relayed during the

testimony of Tara Whiteman, the individual to whom Petitioner made the statement as he left the

victim's apartment after breaking in and striking the victim with the sledgehammer.  PCRA Trial.

Ct. Op., ECF No. 18-1 at 262.  See also Trial Tr. dated July 17, 2012, ECF No. 34-2 at 78 and 85-

86.  Petitioner's statement also was overheard by Tricia Church, who testified at trial.  Trial Tr.

dated July 17, 2012, ECF No. 34-2 at 65-66.  Petitioner confirmed that he made the statement in

his own direct testimony, but explained that it referred to someone else, and was meant to be sarcastic.  Trial Tr. dated July 18, 2012, ECF No. 34-3 at 31-32.

The PCRA Trial Court concluded that this claim was meritless because Petitioner's statement "I killed that bitch dead" was an admission by a party opponent, and admissible under Pennsylvania Rule of Evidence 803(25).  PCRA Trial. Ct. Op., ECF No. 18-1 at 273. The Superior Court concluded that the PCRA Trial Court was correct.  PCRA Sup. Ct. Op., ECF No. 18-1 at 285-86.

Because the PCRA Superior Court recognized that the statement was admissible, id. at 285-86, this Court must proceed under the assumption that it was admissible.  Keller v. Larkins, 251 F.3d 408, 419 (3d Cir. 2001).  Petitioner has not demonstrated that this assumption is incorrect.  Thus, he has not demonstrated prejudice for counsel's failure to object.  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); Ross v. Dist. Attorney, 672 F.3d 198, 211 n.9 (3d Cir. 2012) ("'counsel cannot be deemed ineffective for failing to raise a meritless claim'") (quoting Werts v. Vaughn, 228 F.3d at 202).

Upon review, this Court finds that Petitioner has failed to show that the Superior Court's decision to deny PCRA relief on this claim was the result of an unreasonable application of the Strickland standard, or an unreasonable determination of facts based on evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1) and (2).  In light of AEDPA's stringent standard, federal habeas relief must be denied as to Ground 1.

### 2. Ground 2(a)

In Ground 2, Petitioner asserts:

> Court erred by not holding a voir dire hearing in which prosecution brought up the fact of juror misconduct. An in chamber conference took place after the prosecution brought the issue up outside the presence of appellant, who was unaware matter was being discussed. Also, it was known that an officer of the court had conversations with a member of the jury, during trial, yet nothing was done to voir dire the juror. Defense counsel, stated; "that it may benefit the defendant," without ever objecting to or discussing matter with appellant. Thus, displaying ineffectiveness. Appellant avers this whole issue amounts to "structural error".

ECF No. 1 at 7. This Court has parsed Ground 2(a) from this passage to be the exhausted claim that trial counsel was ineffective for objecting to the prosecution's motion to remove a juror without first consulting with Petitioner, or moving to conduct *voir dire* of the juror based on her alleged disinterest in the case.

Petitioner asserts that this is a structural error, for which prejudice must be presumed. Id. The record does not indicate that he has exhausted this specific argument in state court.

The record reflects that, at 2:45 pm on the first day of trial, the prosecution sought to remove Juror No. 2 because she appeared to be hostile to the trial, and did not appear to be paying attention. Trial Tr. dated July 17, 2012, ECF No. 34-2 at 143-44. Petitioner's defense counsel opposed her removal, opining that she might hang the jury. Id. at 145. After taking the issue under consideration, the trial judge responded the following day:

> I considered the motion and the Court denies it at this time. The juror was acceptable to both attorneys. There has been no evidence presented or observed that she was sleeping, dozing or not paying attention to testimony. There was evidence argued that she looked down during testimony, did not look at the screen during photos or video surveillance, but that alone isn't enough to excuse her when there is opposition[.]

Trial Tr. dated July 18, 2012, ECF No. 34-3 at 4.

The PCRA Trial Court addressed this issue in its Order of April 25, 2017, finding no evidence that Juror No. 2 could not perform as a juror, and denying Petitioner's claim of ineffective assistance claim as meritless.  PCRA Trial. Ct. Ord. dated April 25, 2017.  ECF No. 18-1 at 313-14.  The Superior Court affirmed on the same basis.  PCRA Sup. Ct. Op., ECF No. 18-1 at 287.

This Court cannot say that the conclusion of the state courts on this issue was an unreasonable application of the law or facts.  The United States Supreme Court has opined that "a federal court's review into … a criminal jury's deliberations is a decidedly limited enterprise," primarily because "[a]llegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the [trial] process."  Tanner v. United States, 483 U.S. 107, 120 (1987).  In addition, pursuant to precedent within this Circuit, a trial court should grant a motion for new trial based on juror inattentiveness only if the juror missed an essential part of the trial and the defendant was prejudiced by this misconduct.  See United States v. Resko, 3 F.3d 684, 691 (3d Cir. 1993); United States v. Sheika, 2005 WL 2562969, at *4 (D.N.J. Oct. 7, 2005).

Here, while the evidence of record indicates that Juror No. 2 looked down at times and did not look at certain photos, there is no indication that she missed essential aspects of the trial.  The trial court was on solid ground in not removing Juror No. 2.  A finding that Petitioner's trial counsel did not act deficiently when he failed to support the removal of Juror No. 2 is not an unreasonable application of fact or law.  Moreover, Petitioner has not cited, and this Court has not found, any United States Supreme Court decision that either mandates an inquiry into every instance of possible juror misconduct, or determines that an allegedly inattentive juror's deliberation is *per se* unconstitutionally violative of the right to fair trial.

Furthermore, the record at the trial court indicates that Petitioner's counsel had strategic reasons for not removing Juror No. 2.

> MR. COOKE: I will admit that she has that look on her face. She has made eye contact. When I observed the jurors, she is looking and watching. But she seems somewhat on the hostile side, just sitting there, to the process. Defensively, it's a tactic that can work for me.
>
> THE COURT: Excuse me?
>
> MR. COOKE: Perhaps this is a juror who will hang the jury. I mean, defensively, it's a possibility, a reason to keep the juror from the defense standpoint.

Trial Tr. dated July 17, 2012, at 145.  Such strategic reasons for retaining even a sleeping juror have been upheld on habeas review.  Turner v. Warden, No. 18-17384, 2022 WL 951309, at *15 (D.N.J. Mar. 30, 2022) ("The decision not to object or further question the juror could reasonably be a strategic one.  See, e.g., Ciaprazi v. Senkowski, 151 F. App'x. 62, 63 (2d Cir. 2005) (summary order) (finding that "trial counsel's decision not to object may well have been based on his desire to retain the inattentive juror rather than to seek to replace him with an alternate").

To the extent that Petitioner's new argument that the failure to remove Juror No. 2 was structural error is properly before this Court, see ECF No. 1 at 7, the same is unsupported.

Structural errors are errors so fundamental that prejudice to the petitioner is presumed. Such errors include completely denying counsel to a defendant at a critical stage.  United States v. Cronic, 466 U.S. 648, 659 (1984).  Other recognized structural errors include: defective waivers of counsel, United States v. Booker, 684 F.3d 421, 428 (3d Cir. 2012); denial of a jury trial, McGurk v. Stenberg, 163 F.3d 470, 474 (8th Cir. 1998); and denial of the right to self-representation at trial, the right to a public trial, and the right against unlawful racial exclusion of grand jury members, Arizona v. Fulminante, 499 U.S. 279, 310 (1991).  See also United States v. Gonzalez-Lopez, 548 U.S. 140, 148-49 (2006) (collecting cases).  That said, "if the defendant had

counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis." Neder v. United States, 527 U.S. 1, 8 (1999) (internal alterations and citations omitted)).

Noticeably missing from the examples of structural error above is anything approaching the facts surrounding Juror No. 2 at Petitioner's trial. Petitioner has not identified any opinion by the United States Supreme Court holding that alleged inattentiveness of the nature exhibited by Juror No. 2 qualifies as structural error. Nor has Petitioner cited a case indicating that his trial counsel's failure to seek removal of Juror No. 2 would rise to the same. This Court has been unable to find any such opinion in its own research. Petitioner has failed to meet his burden under Section 2254(d).

Accordingly, relief on Ground 2(a) will be denied.

### 3. Ground 3(a)

In Ground 3, Petitioner asserts as follows:

> Ineffectiveness upon trial counsels failure to investigate and/or consult with a forensic/medical expert, where expert would have supported defense, but instead relied solely on appellants testimony. During trial, appellant was denied cross-examination of witnesses whom took photographs of scene and allegedly collected DNA from weapon involved. They were not introduced. Appellant requested that counsel ask for a continuance and/or recess to request for the introduction of said witnesses. Counsel refused. Counsel, furthermore, failed to object to the absence of labtech., analyst/sorologist, whom actually recovered alleged blood DNA from weapon, thus denying his right to confrontation. Said analyst was never identified in discovery or at trial creating a break in chain of evidence.

ECF No. 1 at 7-8. From this language, the undersigned has parsed Ground 3(a), in which Petitioner presents an exhausted claim of ineffective assistance of counsel with respect to not obtaining or presenting expert witnesses.

The PCRA Trial Court denied this claim on a variety of bases.  PCRA Trial Ct. Op., ECF No. 18-1 at 268-70.  The Superior Court affirmed on the grounds that: (a) Petitioner had failed to identify potential expert witnesses, as required by Pennsylvania law; (b) their purported benefit was speculative; and (c) Petitioner himself had voluntarily withdrawn a request for a continuance at a hearing on July 9, 2012, knowing that experts might not have time to review evidence or testify at trial on July 17 and 18 of 2012.  PCRA Super. Ct. Op., ECF No. 18-1 at 285-86 and n.3.

Upon review, this Court finds that the holding of the Superior Court was neither contrary to, nor an unreasonable application of Strickland, nor was it based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. § 2254(d).

First, to the extent that Petitioner's trial counsel had not obtained an expert witness by the time of trial, Petitioner has not demonstrated deficient performance.  To the contrary, the record indicates that, on July 9, 2012 – less than six months after the crimes were committed, and shortly prior to the scheduled commencement of trial – Petitioner's counsel had submitted a motion for continuance to prepare an expert.  The following discussion occurred on the record at a pretrial hearing on July 9, 2012:

> MR. COOKE: Your Honor, I presented Your Honor -- I would note that I provided your office and the DA's Office, last week, with a copy of the request for continuance. Basically, I stated that the medical data had not been received for the expert, nor had the DNA evidence been received, which when received, I would have needed time to have it reviewed by a defense expert. I indicated that, in my personal/professional opinion, I think that's a manifest injustice not to look at it.
>
> I received the medical data on Friday. I went through all of it. I took some time to read through the relevant portions. I don't see a need -- because the reports are kind of concrete and to the point, as well as the radiology reports, so in this regard, that portion of the continuance request is no longer a valid issue.

But this morning, we were promised -- Mr. Newberry and I spoke on Friday and he indicated that we would have DNA results, which would, my understanding, prove that the victim's blood, which was spattered, were on the Defendant's shoes that were worn there that day. neither does Mr. Newberry. I don't have that result, I would reiterate my request until I have reviewed that.

There are standards for that and I understand the Pennsylvania Crime Lab does excellent work, but I haven't seen it. I don't know what it is. That puts me at a significant disadvantage in terms of telling this man to go to trial with that evidence sitting there.

Mr. Helmick indicated his willingness to go to trial even though that may be coming in; is that correct?

THE DEFENDANT: Yes.

MR. COOKE: So at this time, understanding my expert review might not come in –

THE COURT: How long is it going to take?

MR. COOKE: I'm not sure, because I'm not sure when -- my expert is not available. We would not be able to pick a jury and go to trial.

THE COURT: We are not starting today. Mr. Helmick, the jury trial is scheduled for next Tuesday. It's going to begin on Tuesday, July 17. We are selecting the jury today.

MR. COOKE: The testimony would begin next week. The decision to take it to trial by jury begins today. In that sense, it's accurate and true, but you wish to waive that and go ahead and select a jury; is that true?

THE DEFENDANT: Yes.

MR. COOKE: With that statement made on the record, I would withdraw my Motion to ask for continuance. I would ask that you mark the original I submitted as withdrawn by counsel and Defendant.

THE COURT: I'll ask you to do that.

MR. COOKE: Okay.

Hr'g Tr. dated July 9, 2012, ECF No. 34-1 at 3-5.

By virtue of the hearing, Petitioner was aware that forensic evidence and an expert had not been obtained and might not be ready if trial commenced as scheduled. Rather than allow the continuance, Petitioner gave an informed, lawful instruction to his attorney to withdraw the motion – which he did. This evidence does not support a finding of deficient performance under AEDPA's deferential standard. Dowthitt v. Johnson, 230 F.3d 733, 748 (5th Cir. 2000) ("Counsel will not be deemed ineffective for following their client's wishes, so long as the client made an informed decision.").

Second, Petitioner has not met his burden to show that the state court unreasonably found that he had not shown prejudice. Prejudice resulting from counsel's ineffectiveness "cannot be based on mere speculation about the possibility of finding an expert witness, nor can it be based on mere speculation about the possible testimony." Dobson v. U.S., No. 13-1711, 2016 WL 4941994, at *4 (D.N.J. Sept. 15, 2016) (citing Duncan v. Morton, 256 F.3d 189, 201-02 (3d Cir. 2001)). See also Day v. Mahally, 230 F. Supp. 3d 420, 426 (E.D. Pa. 2017) (finding that a state court's rejection of ineffectiveness claim when, *inter alia*, petitioner failed to identify an expert, was not unreasonable); Oliver v. Santiago, No. 14-1334, 2017 WL 2735409, at *13-14 (D.N.J. June 23, 2017) (state court reasonably rejected petitioner's ineffectiveness claim when, *inter alia*, petitioner "produced no report, certification, or affidavit from a potential expert who would have testified [to what petitioner alleged]. It is sheer conjecture that such an expert witness exists.").

Because Petitioner has failed to meet his burden to show that the state courts unreasonably applied Strickland or the facts with respect to his counsel's performance or prejudice, Ground 3(a) will be denied.

### 4. Ground 4(b)

From the language below, this Court has determined that at Ground 4(b), Petitioner presents an exhausted claim of ineffective assistance of trial counsel for failing to present fact witnesses to impeach testimony regarding the seriousness of victim's injuries.

> Overall the appellant claims he was denied effective counsel, and had brought forth all allegations of error within PCRA, yet, was denied an evidentiary hearing even on constitutional claims. PCRA court should have had an evidentiary hearing on the merits, affording a record of errors to be established.
>
> The appellant asserts, further, that he was denied available witnesses that could have rebutted over inflated seriousness of the injuries sustained by the victim presented by the Commonwealth. Had evidence been presented it would of added reasonable doubt to appellants intent to commit murder, because after the incident the appellant phoned the victim. In fact, prior to trial, the victim, was telling everyone that she felt it was an accident and that her injuries are not as bad as they seem.

ECF No. 1 at 8.  In his *pro se* PCRA petition, Petitioner characterized this issue as being relevant to the "serious bodily injury" charges against him.  ECF No. 19-1 at 89-91.  Petitioner explicitly incorporated this argument in his brief to the Superior Court, ECF No. 30-7 at 36, although he submitted new arguments of its relevance therein as well, which were not exhausted at all levels of review.

The PCRA Trial Court found that Petitioner had failed to demonstrate prejudice.  PCRA Trial Ct. Op., ECF No. 18-1 at 274-75.  The Superior Court affirmed.  PCRA Super. Ct. Op., ECF No. 18-1 at 286-86.

Following review, this Court cannot say that the state court's conclusion was an unreasonable application of <u>Strickland</u>, or an unreasonable determination of the facts.  As the PCRA Trial Court noted, none of the proposed witness testimony referenced in his *pro se* PCRA Petition would call into question the fact that the victim was in substantial risk of death when she

was struck in the head by Petitioner.   PCRA Trial Ct. Op., ECF No. 18-1 at 274-75.

See also Pro se PCRA App'x, ECF No. 18-1 at 176-207.   This is especially true in light of

testimony from the medic who treated the victim at the scene that it was necessary to fly the victim

to a trauma center by helicopter because he believed that she was at substantial risk of death, Trial

Tr. dated July 17, 2012, ECF No. 34-2 at 98, as well as Petitioner's own testimony that a

sledgehammer can cause serious injury even accidentally.   Trial Tr. dated July 18, 2012, ECF No.

34-3 at 44.   Testimony from other eye-witnesses to the victim's physical condition in the aftermath

of the attack supports the same conclusion.   For example, Tara Whiteman testified as follows:

> Q. What did you do after [Petitioner] left?
>
> A. I had pushed the door, it wasn't shut, and I had pushed the door back opened, and that's when I found Lori.
>
> Q. Where was she?
>
> A. She was the majority of the way down her beginning hall. They are not very long. But she was laying face down facing the opposite direction.
>
> Q. Facing the opposite direction?
>
> A. Yes. Like her feet were towards me.
>
> Q. Was her head closer to the door or further away?
>
> A. Further away. Her head was going into the apartment.
>
> Q. Okay. Did you observe any blood?
>
> A. A massive amount, yes.
>
> Q. And where was that located?
>
> A. There was -- on the couch and then it had come down around her itself.
>
> Q. Was there blood on the carpet?
>
> A. The beginning part of the carpet, yes.

Q. Is that where you found her?

A. Yes.

Trial Tr. dated July 17, 2012, at 78-79.

Because Petitioner has failed to meet his burden to show that the state court's determination was contrary to or an unreasonable application of Strickland, or an unreasonable determination of the facts, relief on Ground 4(b) will be denied.

### 5. Grounds 6(a) and 6(b)

In Ground 6, Petitioner asserts the following:

> Counsel failed to object in requesting an offer of proof in seeking a ruling on admissibility of alleged pre-judicial bad acts evidence prior to victims rebuttable testimony which were remote never criminally charged and bore no relationship to offenses that were brought forth before the court. Then denying the appellants right to testify on his own behalf or call available witnesses in his defense that were specifically requested by defendant to sire-rebuttal testimony depriving him of a fair trial.

> Ineffectiveness in failing to object to several falsely mis-represented facts adduced at trial, on prosecutors closing arguments. Ineffective. failing to object to trial courts giving of a supplemental transfered intent instruction to the jury, that unlawfully broadened the theory of culpability as charged in information and presented at trial by the Commonwealth. Then by failing to object to Mr. Helmicks absence during the reading of instruction of transfered intent.

ECF No. 1 at 8. From this language, it appears that Petitioner attempts to raise Ground 6(a), in which asserts that his counsel was ineffective for failing to object to the trial court allowing impeachment testimony from the victim, and Ground 6(b), which is a claim of ineffective assistance for trial counsel's failure to present sur-rebuttal testimony in response to the victim's impeachment testimony.

After a colloquy, Petitioner chose to testify in his own defense at trial.  Trial Tr. dated July

17, 2012, ECF No. 34-2 at 192-96.  During cross examination, Petitioner stated that he never had

laid hands on the victim prior to the incident on January 29, 2012.

> Q. Again, you heard Lori testify yesterday;
>
> A. Yes.
>
> Q. She said that you called her and told her you were going to come and kill her?
>
> A. No, I didn't call her and tell her I was going to kill her.
>
> Q. She lied about that, too?
>
> A. Yeah. I never got to talk to her. The only thing I might have told her was I'm coming after Louie but I never actually got to talk to her on the phone. Tammy was talking to her.
>
> Q. You never had any problems with Lori before?
>
> A. We had arguments, yes, I mean, but I never tried to beat her up or nothing
>
> Q. Never laid your hands on her?
>
> A. No.

Trial Tr. dated July 18, 2012, ECF No. 34-3 at 45-46.  In response, the prosecution re-called the

victim, who testified as follows:

> Q. And do you recall him testifying that he had never laid a hand on you?
>
> A. That is not true.
>
> Q. Can you please explain that?
>
> A. There was an incident where I was at somebody's house and he was mad I was there, and he came to the door and he wanted me to go to the door. I told him, I said, you come in, I didn't want to go to the door. And so he was right there at the screen door, and when I finally did go over, he put his fist through the screen door and hit me in the face.

***

Q. And aside from that incident, were there any other specific times where the Defendant was violent with you?

A. Yes.

Q. And can you explain what that was?

A. He had poured beer over my head.

Q. When did that occur?

A. Just this past winter. Not this winter.

Q. 2011 or 2012?

A. 2011.

Q. And are there any other instances?

A. That happened twice.

Q. Do you recall where?

A. Yes, at Tammy Sprowls house was one.

Q. Do you recall where the other event happened?

A. I know it was cold out. It was 2011.  It might have been 2012.
No, 2011.

Id. at 84, 86-87.  Petitioner's trial counsel was aware of the nature of the victim's rebuttal, and thus did not demand an offer of proof prior to her testimony.  Id. at 83.  Petitioner did not provide surrebuttal testimony.  Id. at 90.

The PCRA Trial Court found that Petitioner had failed to show prejudice with respect to either of these claims.  PCRA Trial Ct. Op., ECF No. 18-1 at 276-77 (disposing of Petitioner's claims 5-10).  See also *Pro se* PCRA Pet., ECF No. 19-1 at 233-239 (Petitioner's claims 9 and 10, which exhaust Claims 6(a) and 6(b) of the present Petition).  The Superior Court affirmed on the same basis, noting that the hindsight analysis employed by Petitioner did not meet the test for

ineffective assistance of counsel, and that Petitioner had failed to demonstrate prejudice.  PCRA Super. Ct. Op., ECF No. 18-1 at 287.

Upon review, Petitioner has failed to meet his burden to show that this was an unreasonable application of the Strickland standard or the facts.  With respect to Ground 6(a), Pennsylvania courts allow the admission of crimes and other bad acts to impeach the credibility of a testifying defendant.  See Com. v. Melendez-Rodriguez, 856 A.2d 1278, 1283 (Pa. Super. Ct. 2004) (quoting Com. v. Reid, 811 A.2d 530, 550 (Pa. 2002)).  Trial counsel's failure to object or seek an offer of proof prior to the victim's testimony was not unreasonable under the facts of this case, and did not prejudice Petitioner.

With respect to Ground 6(b), much of Petitioner's argument before this Court relates to potential testimony that he believes would bolster his claim that he accidentally struck the victim when he broke through her door with his sledgehammer – and not with respect to the exhausted issue of whether trial counsel was ineffective for not rebutting the victim's impeachment testimony that Petitioner had been violent with her in the past.  ECF No. 26 at 28.

The following is the sum of his argument in his Traverse with respect to rebutting the victim's impeachment testimony:

> Furthermore [Petitioner] was refused his right to sir rebutt when he
> wanted to take the stand and had available witnesses to support that
> the incident did not happen as victim stated.  Also, Mr. Cooke on
> cross exam ended trial with inflammatory testimony.

Id. at 30.

Along with his *pro se* PCRA petition, Petitioner submitted statements from Tammy Sprowls and James Hoban.  Sprowls' affidavit mostly is concerned with events leading up to the crimes on January 28-29, 2012.  ECF No. 18-1 at 188-89.  Hoban's declaration relates to a statement made on April 5, 2012 by the victim that the Petitioner struck her accidently and would

never hurt her on purpose. Id. at 196. Neither is relevant to the victim's testimony impeaching the Petitioner's statement that he never laid a hand on her.

Petitioner does not meet his burden to show that his counsel was ineffective for failing to call additional witnesses to rebut the victim's impeachment testimony.[7]   Additionally, in light of the overwhelming record evidence of his guilt – including Petitioner's admissions that he broke down the door of the victim's apartment, Trial Tr. dated July 18, 2012, ECF No. 34-3 at 26, saw the victim, id. at 27, "evidently" struck her with the sledgehammer, id. at 56-57, and the testimony regarding the injuries suffered by the victim, Trial Tr. dated July 17, 2012, ECF No. 34-2 at 43-44 and 67 – it was not unreasonable that the state courts concluded that Petitioner had failed to demonstrate prejudice for counsel's failure to call sur-rebuttal testimony on whether Petitioner had been violent with the victim in the past.

Accordingly, Petitioner has failed to meet his burden as to Grounds 6(a) and 6(b), and they are denied.

### 6. Ground 8(b)

In Ground 8, Petitioner alleges the following:

> Before appellant was appointed PCRA counsel, he moved pro-se in which he submitted a supplemented PCRA. The court failed to recognize the issues within his supplemental filing. At the bare minimum the lower court should have accepted it as amended PCRA.

> Issues being; 1 trial court erred as a matter of law when it gave an unwarranted and unnecessary jury instruction on voluntary intoxication as a defense which neither party requested as voluntary intoxication defense was not available nor pursued by the defendant. It only served to confuse the jury.

---

[7] To the extent that he argues that he was denied his right to testify himself to rebut the victim's impeachment testimony, the undersigned notes that he already had testified at trial, and that such a claim was not exhausted at the state court level, and is procedurally defaulted. See Part III, supra.

> 2 Ineffective counsel for failing to object to voluntary intoxication charge to jury thereby failing to preserve the issue for litigation in post-sentence motions and on appeal.

ECF No. 1 at 9.  At Ground 8(b), Petitioner has exhausted the claim that his counsel was ineffective for failing to object to the trial court giving the jury an instruction on voluntary intoxication.  As stated above, this is the only ground in the Petition that is entitled to *de novo* review.

At trial, the victim testified during cross examination as follows:

> Q. Yes. All right. So in terms of the actual striking you, that's not something you remember now at any point; correct?
>
> A. Correct.
>
> Q. And you haven't remembered it since it happened; is that correct?
>
> A. Correct.
>
> Q. And, in fact, you told people that it was an accident; correct?
>
> A. The way -- the reason why I said that was because I considered the vodka had a reason, too, for him to do that. Because it was just – that's why I was saying I thought it was an accident, because he accidently did it because of the alcohol that played a factor to it.

Trial Tr. dated July 17, 2012, ECF No. 34-2 at 49.

However, under Pennsylvania law, voluntary intoxication is not a defense to the crimes with which Petitioner was charged, and cannot be used to negate the *mens rea* element of any crime other than to reduce a charge of murder from a higher degree to a lower degree.  18 Pa. C.S.A. § 308.  As such, the prosecution raised the issue of a clarifying jury instruction, stating:

> MR. NEWBERRY: There are a couple of issues I guess I would raise, maybe they are addressed at other places throughout your charge, but the first would be voluntarily intoxication, if that comes out, there is a specific jury charge that states it's not a defense. If you think that's appropriate based on the testimony, I would ask for that. I know we don't know that yet.
>
> THE COURT: We will see.

Trial Tr. dated July 17, 2012, ECF No. 34-2 at 188.

At the conclusion of testimony, and at the prompting of the trial court, the prosecution indicated that it wanted the court to provide a clarifying instruction; Petitioner's trial counsel indicated that he did not want such an instruction. Tr. of Excerpt of Proceedings dated July 18, 2012, ECF No. 34-5 at 30-31. The trial court gave the following instruction regarding evidence of voluntary intoxication:

> THE COURT: Ladies and gentlemen, I am moving on to the next charge. Voluntary intoxication is not a defense to a criminal charge. A person who voluntarily uses alcohol or intoxicants cannot become so intoxicated that he is legally incapable of committing a crime.
>
> There is another related rule. A Defendant is not allowed to rely on evidence of his own intoxication to prove that he lacked the mental state required for a particular crime. Keep this rule in mind when you are deciding whether the Defendant had the intent to kill Lori Phillips required for this crime of Attempted Murder.

Id. at 31.

Petitioner asserts that his counsel's failure to object to this instruction was confusing to the jury, ECF No. 1 at 9, and precluded him from arguing that striking the victim was a mistake due to his voluntary intoxication. ECF No. 26 at 35.

As a matter of state law, voluntary intoxication is not a defense to attempted homicide, and evidence thereof is relevant solely to mitigate a charge of homicide from a higher degree to a lower degree. Com. v. Constant, 925 A.2d 810, 821 (Pa. Super. Ct. 2007), overruled on other grounds by Com. v. Minnis, 83 A.3d 1047 (Pa. Super. Ct. 2014).

Put another way, under Pennsylvania law, Petitioner's voluntary intoxication during the commission of the crimes cannot be used to show that he did not have the intent to kill the victim, and instead struck her by accident. And that is exactly what the instruction on voluntary intoxication provided by the trial court clarified to the jury with respect to the evidence of Petitioner's intoxication on the record.

Moreover, in assessing whether the jury charge was erroneous, this Court must follow the familiar rule stated in <u>Cupp v. Naughten</u>, that "[i]n determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." 414 U.S. 141, 146-47 (1973).

Here, the trial judge instructed the jury on the elements of the crimes with which Petitioner was charged, including the intent that was required. Notably, with respect to the attempted murder charge.

> Let me address the issue of intent. A person cannot be guilty of an attempt to commit a crime, in this case, Murder, unless he has a firm intent to commit that crime. If he has not definitely made up his mind, if his purpose is uncertain or wavering, he lacks the kind of intent that is required for an attempt.

Tr. of Excerpt of Proceedings dated July 18, 2012, ECF No. 34-5 at 20. The jury also was instructed that the prosecution bore the burden of proving each element of a charged offense beyond a reasonable doubt. <u>Id.</u> at 8 and 21. Moreover, Petitioner took the stand in his own defense, and testified that he struck the victim accidently when he was trying to push her out of the way. Trial Tr. dated July 18, 2012, ECF No. 34-3 at 55-6. Trial counsel argued that it was an accident in closing. <u>Id.</u> at 98-99.

Even on *de novo* review, Petitioner has failed to show prejudice with respect to trial counsel's failure to object to the jury instruction on voluntary intoxication. Accordingly, he cannot satisfy the <u>Strickland</u> standard, and relief under Ground 8(b) will be denied.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability will be denied, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. § 2253(c)(2). <u>See also</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000).

## VI.  CONCLUSION

For the reasons set forth herein, the Petition, ECF No. 1, will be denied.  A certificate of appealability also will be denied.

An appropriate Order follows.

Dated: February ___/___, 2023                    BY THE COURT:

                                                 MAUREEN P. KELLY
                                                 UNITED STATES MAGISTRATE JUDGE

cc:      PAUL CHARLES HELMICK
         KT-3789
         SCI Mercer
         801 Butler Pike
         Mercer, PA 16137


         Counsel of record (via CM/ECF)

46